## XENAUTHLUS S. ALLEN *et al.*

### *v.*

## ANDREW S. SAWYER *et al.*

1. PLEADING AND EVIDENCE—*estoppel under allegation of payment.* Upon bill to foreclose a mortgage, a subsequent purchaser from the mortgagor, who, in his answer, defends only by alleging payment by himself, can not insist upon an equitable estoppel growing out of the fact that the mortgagee obtained possession of the mortgage. upon which was indorsed a satisfaction, shown to have been made thereon under the expectation of receiving full payment.

2. EVIDENCE—*as to fact of payment.* The possession of a mortgage given to secure the payment of two notes, without the last note, with an indorsement of full payment and satisfaction on the mortgage, is not conclusive evidence of payment, and may be explained, as, by showing it was made by the holder of the mortgage and notes when sent for collection, but not to be delivered except on full payment.

APPEAL from the Circuit Court of Vermilion county; the Hon. OLIVER L. DAVIS, Judge, presiding.

Mr. J. W. JONES, for the appellants.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill in chancery, exhibited in the court below, by appellants against appellees, to foreclose a mortgage executed by the appellee Sawyer to appellants, on the 15th of February, 1859, to secure the payment of two promissory notes, for $413.33 each, due, the first on the 1st day of April, 1869, and the second on the 1st day of April, 1870. It is admitted that the first note was paid before the filing of the bill, but a balance is claimed due on the second note of $245.37, with interest thereon, at the rate of ten per cent per annum, from Dec. 7, 1870, for which a foreclosure of the mortgage is prayed.

The appellee Cattell answered the bill, admitting the execution of the mortgage, but alleging that the notes thereby secured had been fully paid; that he was a subsequent grantee of the appellee Sawyer, and as such had fully paid the notes secured by the mortgage.

The other appellees failing to answer, decree *pro confesso* was rendered against them.

On hearing, the court found that the notes secured by the mortgage had been paid, and decreed that the bill be dismissed.

The evidence preserved in the record does not sustain this decree. Cattell does not pretend that he paid all that was due on the mortgage. He produced the mortgage, on which was indorsed a credit of $700, dated Dec. 7, 1860, signed by "L. H. Burroughs, agent," and a certificate thereto attached

in these words: "This is to certify that we, O. S. Burt and X. S. Allen, mortgagees of the instrument to which this is attached, hereby acknowledge that the same is paid in full, satisfied and redeemed, its conditions having been fully complied with. X. S. Allen, O. S. Burt, Granger, Ohio, March 23, 1871." He then said: "I saw this mortgage first in Danville, when I paid Lewis Burroughs the $700 on it. I then told Burroughs I would give him my note, with J. G. English as security, for the balance of this mortgage debt. I came to the bank to make note, after Burroughs got a letter from Allen, and Burroughs wanted fifteen per cent interest. I would not give it, and Burroughs said he would settle with Sawyer, and I heard nothing more until Sawyer came to me, some years after, with the mortgage and release attached." On cross-examination he says: "Burroughs did not present the release to me; never saw the mortgage and release until Sawyer gave me them." He also says that he never paid anything on the mortgage but the $700.

Allen and Burt both testify that they have received only $700 on the mortgage; that the notes and mortgage were placed in the hands of Burroughs, their agent, for collection; that they executed and placed in Burroughs' hands a release of the mortgage, to be delivered to Cattell when he should pay Burroughs the $700, and give him, for them, his (Cattell's) note for the balance due on the mortgage; and that they never authorized any one to deliver the mortgage or receipt for the amount thereof, without full payment of the amount due.

Burroughs testifies that he held the notes for collection from the complainants, and that he had the second note in his possession after receiving the note from complainants, until he delivered it to Jones, complainants' solicitor; that he also received from the complainants, at the same time he received the notes, the mortgage with the writing of release written thereon, and that he offered the same to Cattell; that Cattell would not accept the release, because it was not acknowledged before a proper officer; that he then had a release prepared,

which he sent to Allen and Burt, and received it back properly acknowledged by them; that Cattell paid $700, being the note first due, and $227.86 on the second note; that Cattell then refused to give his note for the balance, until witness settled with Sawyer, and after he settled with Sawyer, Cattell refused to give his note. He denies that he gave the mortgage or release thereon to Sawyer, and says that he does not know how Sawyer obtained possession of them. His settlement with Sawyer was only to ascertain the balance—principal or interest—due on the mortgage.

Jones testifies that he received the second note, with the indorsement of a credit of $227.86 thereon, just as it is now, and the deed of release spoken of by Burroughs as having been acknowledged and returned to him by Allen and Burt, which he has since lost.

It will thus be seen that the indorsement of payment on the mortgage is fully explained, and, notwithstanding disagreements between Burroughs and Cattell in their evidence in other respects, they entirely agree that Cattell never paid but the $700 on the mortgage, and that he did not give his note for the balance.

It is also quite as clear, that Sawyer paid nothing on the mortgage after Cattell made the $700 payment. We do not think the evidence of Shields tends to discredit that of Burroughs. He says he was present when Sawyer and Burroughs were calculating interest and trying to find out how the account stood between them as to the mortgage debt, and Sawyer then made out and handed him a memorandum, which he attested, showing that the interest due on the mortgage, up to the time Sawyer sold to Cattell, was $168.17. He saw no money paid, and does not think any was paid; did not hear how much Sawyer had paid, or how much Cattell had paid on the mortgage, and is unable to state that either of them said the mortgage had been paid. Burroughs shows that this so-called settlement amounted to nothing more than a computation of interest, so that the parties might know the amount due.

27—88 ILL.

Burroughs' evidence, then, stands uncontradicted as to the fact that the mortgage has not been paid, and it is corroborated by the circumstance that the note last due has never been taken up and canceled.

Cattell testifies, that on the faith of Sawyer's possession of the mortgage and indorsement thereon, he surrendered to him a deed which he had held back. It is very questionable, under the contradiction given to his evidence by Burroughs on this point, and the fact that he does not pretend that Sawyer had possession of the note last due, whether, under a proper state of pleadings, he could claim this as an equitable estoppel; but it is very certain it can not avail him under his answer. He alleges and relies, in his answer, solely on the defense that he paid off the mortgage after his purchase from Sawyer, and he can not, under this, give evidence of an equitable estoppel. *Moffet* v. *Clements,* 1 Scam. 384.

The decree is reversed and the cause remanded.

*Decree reversed.*